**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 29 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: JAMES H. SANDERS, JR.,

    Debtor.

_____

JAMES H. SANDERS, JR.,

    Appellant,

v.

ROBERT M. VAUGHN, JR.,

    Appellee.

No. 99-6396
(D.C. No. CIV-98-1765-T)
(Western District of Oklahoma)

---

**ORDER AND JUDGMENT**[*]

---

Before **BALDOCK**, **HENRY** and **LUCERO**, Circuit Judges.

---

James H. Sanders, Jr., appearing pro se, challenges the district court's

affirmance of a decision of the bankruptcy court not to exempt Sanders's debt to

plaintiff-appellee Robert M. Vaughn, Jr., from discharge pursuant to 11 U.S.C.

---

[*] The case is unanimously ordered submitted without oral argument pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

§ 523(a)(6). Exercising jurisdiction pursuant to 28 U.S.C. §§ 158(d) & 1291, we affirm the judgment of the district court.

In March 1994 Sanders hired Vaughn as his attorney on a contingency basis to represent him before the Internal Revenue Service ("IRS") for the purpose of securing a tax refund for the years 1988-1990. The agreement between Sanders and Vaughn gave Vaughn the power of attorney in the refund action and stipulated that refund checks would be sent to Vaughn as Sanders's attorney. After learning the IRS was willing to offer him $30,000 in settlement of the refund dispute, in February 1995 Sanders wrote a letter to the IRS informing the agency that he was revoking Vaughn's power of attorney. Several days later, after calling the IRS regarding Sanders's refund action, Vaughn was informed by IRS revenue agent Kathy Bird that Sanders had revoked his power of attorney and that she could not speak with him.

On March 10, 1995, the IRS sent a refund checks in the amount of $35,927.34 to Sanders, care of Vaughn. On April 5, 1995, Sanders completed a "Taxpayer Statement Regarding Refund", stating he did not receive the refund checks sent by the agency. The IRS thereupon stopped payment on the checks sent to Vaughn and issued replacement checks, sending those checks directly to Sanders.

On April 10, 1995, in a telephone conversation between the two, Sanders told Vaughn he owed him nothing and was not going to pay Vaughn's contingency fee. Vaughn filed suit against him in the District Court of Oklahoma County three days later, seeking an attorney's lien with interest and costs. The court entered judgment for Vaughn. Seeking to collect the debt Sanders—who had by now filed for bankruptcy—owed him as a result of the judgment, Vaughn instituted an adversary proceeding in the United States Bankruptcy Court for the Western District of Oklahoma in April 1998 under 11 U.S.C. § 523(a)(6), and a trial was held on the narrow issue of whether Sanders's debt fell under that statute.[1]

The bankruptcy court, after trial, found Sanders "learned that the refunds were forthcoming and decided to beat Vaughn out of the fee by canceling the power of attorney and retaining the full amount of the refunds to himself." Vaughn v. Sanders (In re Sanders), Adversary Proceeding 98-1157-BH, at 2 (Bankr. W.D. Okla. Oct. 14, 1998). The court held that, because this was "an act deliberately intended to harm Vaughn by avoiding his contractual right to the contingent fee," it was "willful" and "malicious" under 11 U.S.C. § 523(a)(6), thereby exempting Sanders's debt to Vaughn from discharge.

---

[1] Vaughn also relied on 11 U.S.C. § 523(a)(4). The court tried that claim as well, but ultimately rested its holding on 11 U.S.C. § 523(a)(6).

Sanders appealed to the district court, alleging six claims of error, to the effect that the bankruptcy court erroneously found "willful and malicious injury" under 11 U.S.C. § 523(a)(6) in light of the facts before it. The district court affirmed the judgment of the bankruptcy court, and this appeal followed.

"We review legal determinations by the bankruptcy court de novo, while we review its factual findings under the clearly erroneous standard." Osborn v. Durant Bank & Trust Co., 24 F.3d 1199, 1203 (10th Cir. 1994) (citation omitted). "It is especially important to be faithful to the clearly erroneous standard when the bankruptcy court's findings have been upheld by the district court." Id. (citation omitted).

Sanders argues that under Kawaauhau v. Geiger, 523 U.S. 57 (1998), he did not cause Vaughn "willful and malicious injury" pursuant to 11 U.S.C. § 523(a)(6). In support of that contention, he first argues, as a factual matter, that he did not have the intent to injure Vaughn's proprietary interest in receiving his contingency fee and that he could not have intended to bilk Vaughn of his interest in an attorney's lien because such a lien did not exist until Vaughn filed suit against him in the District Court of Oklahoma County. Rather, Sanders claims, he fired Vaughn because the latter failed to appear at a meeting scheduled between Sanders and the IRS, and the bankruptcy court committed reversible error by not crediting Sanders's version of events.

We disagree. "A finding of fact is not clearly erroneous unless it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made." Southern Colo. MRI, Ltd. v. Med-Alliance, Inc., 166 F.3d 1094, 1099 (10th Cir. 1999) (internal quotations and citation omitted). Moreover, "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." Anderson v. Bessemer City, 470 U.S. 564, 575 (1985) (citations omitted). In the present case, the bankruptcy court determined that Sanders's proffered explanations for his actions were not credible. The court stated,

> Frankly, it looked like [Sanders] figured out he was going to get these refunds, about $30,000. 'Well before I get them, I'm going to beat the lawyer out of his fees.' That's what it looks like.

(II R. at 57.) That is a credibility determination we may not disturb on appeal. See Anderson, 470 U.S. at 575. Whether or not the attorney's lien came into being before Vaughn filed suit, the evidence before the bankruptcy court was amply sufficient to conclude Sanders was attempting to bilk Vaughn out of the contingency fee to which Vaughn was entitled for successfully pursuing the

refund action against the IRS.  It was not clear error for the bankruptcy and district courts to so determine.

In addition to challenging the lower courts' factual findings, Sanders claims that, even if the courts' factual conclusions were true, there would be no grounds for finding "willful and malicious injury" under 11 U.S.C. § 523(a)(6).  He argues first that <u>Geiger</u> expressly excludes "knowing breach of contract" from "willful and malicious injury."  <u>Geiger</u>, 523 U.S. at 62.  However, that is a misreading of <u>Geiger</u>, which stands rather for the proposition that an injury must be "desired []or in fact anticipated by the debtor."  <u>Id.</u>  The debtor must intend to cause injury, not merely commit "a deliberate or intentional act that leads to injury."  <u>Id.</u> at 61; <u>see also</u> <u>Mitsubishi Motors Credit of Am., Inc. v. Longley (In re Longley)</u>, 235 B.R. 651, 657 (B.A.P. 10th Cir. 1999) (holding "[w]illful injury may also be established indirectly by evidence of both the debtor's knowledge" of the creditor's rights and "the debtor's knowledge that the conduct will cause particularized injury") (citation omitted).  Contrary to Sanders's interpretation, nothing in <u>Geiger</u> indicates the Supreme Court's intention to immunize debtors under 11 U.S.C. § 523(a)(6) for "willful and malicious" breaches of contract.  <u>Cf.</u> <u>Texas v. Walker</u>, 142 F.3d 813, 823-24 (5th Cir. 1998) (holding breach of contract may be "willful and malicious injury" under § 523(a)(6)), <u>cert. denied</u>, 119 S. Ct. 865 (1999); <u>N.I.S. Corp. v. Hallahan (In re Hallahan)</u>, 936 F.2d 1496,

1501 (7th Cir. 1991) (holding willful breach of contract qualifies under § 523(a)(6)).  The lower courts committed no error of law by determining that Sanders's deliberate attempt to bilk Vaughn out of his contingency fee constituted a "willful and malicious injury" under 11 U.S.C. § 523(a)(6).

Finally, Sanders argues the district court judge should have recused himself from this matter because he presided at a previous criminal trial in which Sanders was defendant and is a judge in the same judicial district as the bankruptcy court.  We have grave doubts as to the timeliness of this claim.  "Although this circuit has not attempted to define the precise moment at which a [28 U.S.C.] § 455(a) motion to recuse becomes untimely, our precedent requires a party to act promptly once it knows of the facts on which it relies in its motion" in order to "conserve[] judicial resources and alleviate[] the concern that it is motivated by adverse rulings or an attempt to manipulate the judicial process."  United States v. Pearson, No. 97-3268, — F.3d —, 2000 WL 201169, at *32 (10th Cir. Feb 22, 2000) (citations omitted).  We find no record that Sanders ever filed such a motion with the district court.  However, even if this claim passes muster on grounds of timeliness, there is nothing in the facts cited by Sanders—i.e., the district court judge presided over Sanders's previous criminal case and sat in the same judicial district—that raises the specter of impropriety.  Without more, the fact that a judge presided in a previous criminal matter is not a valid ground for

recusal. As for Sanders's contention of impropriety arising from the common location of the district and bankruptcy courts, we likewise fail to see how that fact presents a conceivable basis for recusal.

The judgment of the district court is AFFIRMED.

The mandate shall issue forthwith.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge